UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

DEC 0 6 2000

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

CONSECO FINANCE SERVICING CORP. )
f/k/a GREEN TREE FINANCIAL )
SERVICING CORPORATION, )
                                )
             Plaintiff,         )
                                )
     v.                         )   No. 4:00CV1776 ERW
                                )
NORTH AMERICAN MORTGAGE CO.,    )
                                )
             Defendant.         )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order,

Preliminary Injunction and Permanent Injunction. (Docket # 5).   On November 8, 2000, Plaintiff

filed its Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction.

(Docket # 5).  In that Motion, Plaintiff Conseco alleged that Defendant North American has been

"raiding" Conseco's offices on a nation-wide basis, as it has been repeatedly soliciting its employees

to resign and come work for North American.  Conseco further alleged that many former employees

who had left to work for North American were misappropriating the following types of alleged trade

secrets: (1) customer loan files, including loan application materials, (2) potential customer lead

sheets, (3) customer files, and (4) confidential information regarding Conseco's internal operations.

(Id.) In that Motion, Conseco sought a temporary restraining order that prohibited North American

and all of its employees from disclosing any of these trade secrets, that required the return of any

documents reflecting any of these trade secrets, and that prohibited any future solicitation of

Conseco's employees by North American. On that date, the Court granted Plaintiff's motion in part.

*34*

(Docket # 7).  The Court directed its Temporary Restraining Order at North American and twenty-four former Conseco employees that had at that time been identified by Conseco as currently working for North American.  That order directed these parties not to disclose any of the above types of trade secrets, and further ordered them to return any trade secret information belonging to Conseco that they had in their possession.  The Court denied, however, Plaintiff's motion for an order prohibiting future solicitation of Conseco employees.

On November 20 and 21, 2000, a hearing was conducted before this Court regarding Plaintiff's motion for preliminary injunction.  After careful consideration of the evidence adduced at that hearing, the Court will grant Plaintiff's motion for preliminary injunction in part.  As explained below, the Court holds that the facts of this case warrant a narrowly tailored injunction relating to those customer loan files removed from Conseco's offices by Kevin Kattleman, and relating to those files copied by Kevin Podner just prior to his resignation.  The Court denies, however, all other claims by Conseco for injunctive relief.

## I. FACTUAL BACKGROUND

Conseco Finance Servicing Corporation, formerly known as Green Tree Financial Servicing Corporation, is a national financial services company.  Conseco is a Delaware corporation, with its principle place of business in Minnesota. This company contains a number of financial and insurance divisions, one of which being its mortgage service division.  This division markets and originates loans, including residential loans for individuals.  For many years, this division has made loans in the "subprime" lending market.  This market is so named, as it consists of individuals who have a less than perfect credit history, or who currently have a substantial amount of credit card debt.  In

2

the past, Plaintiff has provided services to individuals within this market who wish to consolidate their credit card debt. Conseco currently maintains around 120 branch offices nation-wide, including one in St. Charles, Missouri.

North American Mortgage Company is a wholly owned subsidiary of The Dime Savings Bank of New York, FSB. While North American's principle place of business is in the state of New York, it maintains an office in the county of St. Louis, Missouri. North American is a direct competitor of Conseco, as it markets and originates loans, including home loans for individuals. Recently, North American has begun to expand its services to include the subprime lending market.

Conseco employs a number of different strategies in order to garner new customers. One of these strategies is to generate potential customer leads through a computerized database. Conseco has developed a computer program which analyzes financial information from over 40 million individuals. Using a unique proprietary formula, this program identifies individuals who could potentially benefit from Conseco's debt consolidation services. Plaintiff compiles a list of the potential customers, and a copy of this list is sent to Plaintiff's branch offices throughout the country in the form of "customer lead sheets." These lead sheets are color coordinated. Those leads that are considered the most promising are colored red. Those leads that are considered good are colored white. Those leads that are only considered decent are colored blue. Once the office manager of a Conseco branch receives such a lead sheet, he or she forwards it on to a loan originator, who then calls these potential customers to offer Conseco's financial services.

Conseco takes a number of steps to insure the confidentiality of these lead sheets. Conseco informs all of its employees that the information contained in these lead sheets is confidential, and

3

therefore not to be disclosed. All of Conseco's employees acknowledge their understanding of this confidentiality, as all employees are required to sign a form that acknowledges their receipt and understanding of the contents of Conseco's Employee Handbook. This handbooks states that "non-public information about customers, dealers, and others is strictly confidential." While it is undisputed that the lead sheets themselves are not generally accessible to the public, North American asserts that much of the information contained within these lead sheets can either be purchased from various credit agencies or found in mortgage records which are accessible to the public. Plaintiff counters that while some of the information within these lead sheets can gleaned from these two sources, its proprietary computer program provides a unique depth of information which cannot be obtained from alternative sources.

In addition to its customer lead sheets, Conseco also employs other strategies to generate new business. Conseco "cross-markets" with current customers. In other words, Conseco analyzes the financial situations of current customers and attempts to identify individuals whose financial situation is such that they might be in need of additional financial services. In addition, Conseco also receives new customers in the way of referrals from various business associates. Conseco also attempts to generate new business via telemarketing campaigns and advertisements on the internet.

Over the past six months, a substantial number of Conseco's office managers and loan originators have resigned. Many of these former employees now currently work for the North American. Conseco has identified thirty-eight former employees from six different offices who

4

resigned from Conseco in order to begin working for North American.[1]  In many instances, these former employees have resigned after receiving solicitation by one or more of North American's employees.  In some instances, an office manager who left Conseco would take a number of the loan originators working under that manager with him or her to North American.  Most, if not all of Conseco's former employees who now work for North American are performing essentially the same types of tasks that they performed at Conseco.

A review of the evidence, however, provides some insight on the motivation for these former employees to resign from Conseco.   That evidence indicates that Conseco's mortgage service division has undergone a significant number of changes within the past year.  The leadership at Conseco has determined that it should no longer offer its services in the subprime lending market. A number of Conseco's office managers and loan originators have spent their careers at Conseco focusing on the subprime lending market.  A number of these now former employees who testified

---

[1] These former employees are listed as follows, and organized by office:

**St. Charles, Missouri:** Scott Bristol, Kevin Baustian, Tammy Burton, Brad Childs, Taryn Codak, Brent Fairchild, Michael Gilbert, Greg Hartenberger, Steve Jones, Nicole Rellergert, and Thomas Wiss.

**O'Fallon, Illinois:** Kevin Kattelman, Thomas Detienne, Eric Ellis, Todd Grant, Daniel Hewerdine, Steve Jenkins, and Bradley Spaulding.

**Springfield, Illinois:** Kevin Podner, Stacy Barnett, Josh Eddington, Scott Miles, Jeff Smothers, and Fred Young.

**Colorado Springs, Colorado:** Brian Enloe, Elizabeth Rabalis, Debbie Damon-Rodriguez, Kevin Wade, Lawrence Crawford, Delana Purling-Allen, and Vicki Jo Baddgor.

**Duluth, Minnesota:** Ben Schnackenberg, Ben Siermaier, Nicholas Altier, and Damien Fogg

**Lenexa, Kansas:** Shannon Kraft, Sheila Dees, and Gloria Cowles.

at the preliminary injunction hearing indicated that because Conseco was leaving the subprime lending market, they had begun to develop significant concerns about their future livelihood if they remained at Conseco, especially in light of the fact that they all worked on commission. In addition, within the past year, the leadership at Conseco has also altered the amount of authority that area managers possess, as it appears that significant restraints have been placed on an area manager's ability to finalize various lending transactions. A number of former Conseco area managers have testified that this constraint in authority only added to their concerns about their future economic viability if they remained at Conseco. Finally, these former employees have also indicated that they were worried about Conseco's overall future financial performance. This concern was fueled by the fact that Conseco had closed thirty of its 150 branch offices throughout the country within the last year.

On November 20 and 21, 2000, a hearing was conducted before this Court regarding Plaintiff's motion for preliminary injunction. At that hearing, Plaintiff specifically identified three former employees that it alleged had misappropriated its trade secrets. Plaintiff elicited the testimony of Kevin Kattleman, a former area manager in Plaintiff's O'Fallon, Illinois office. That testimony indicated that Kattleman had fourteen customer loan files from Conseco in his possession after he began to work for North American. These documents included personal financial statements of Conseco customers, loan applications, appraisals, income calculation worksheets, W2 forms, payroll information of Conseco customers, income calculation worksheets, tax returns and bank statements of Conseco customers. These files were located in his office at North American until he returned them to Conseco, as ordered by this Court in its Temporary Restraining Order. Kattleman

6

testified that he was uncertain as to exactly how the customer loan files came to be located in his office at North American.

Plaintiff also elicited the testimony of Kevin Podner, a former area manager from Conseco's office in Springfield, Illinois. That testimony indicated that shortly before Podner's resignation from Conseco, he made a copy of a substantial number of loan applications on which he had worked during his time with Conseco. The exact number of loan applications copied was not specified. Podner attempted to explain his actions by testifying that he made these copies in order to aide an employee who wished to make the transition to loan originator. Podner further testified that in his line of work, it was very common to help new loan originators in this matter, as it is much easier to generate new business with customers who have already conducted previous business with Conseco.

In addition, Plaintiff also elicited the testimony of Scott Bristol, a former area manager at Conseco's St. Charles, Missouri office. Bristol testified that while he did not have personal knowledge that any loan originators working under him in St. Charles made copies of customer loan applications, it was possible that such copying did occur. Bristol also stated that he encouraged three of the loan originators working under him at Conseco to resign and work with him at North American. These three individuals now apparently work under Bristol at North American. Bristol also testified that before leaving Conseco, he compiled a list of 100 to 200 customers who had previously engaged in business with Conseco. This customer list included the names and phone numbers of these customers. Upon arriving at North American, Bristol gave these names and numbers to loan originators as leads, who contacted these former Conseco customers. While Bristol testified that he thought between one to six of these leads resulted in new business for North

7

American, he speculated that as many as ten of these former Conseco customers could have switched their business to North American.

In addition, Bristol returned a number of documents at his deposition, in accordance with the Court's Temporary Restraining Order.   These documents contained information concerning Conseco's internal operations, including monthly retail point income reports generated by each Conseco office, reports ranking the retail volume by branch, reports of retails loans funded by region, financial summaries of each branch, FTE expense ratio reports, expense analysis reports, expense analysis retail volume variance reports, and reports on credit insurance protection.

Bristol also testified at the preliminary injunction hearing that while he began his employment with North American on June 30, 2000, he did not resign his position with Conseco until July 12, 2000.  Consequently, he received pay checks from both of these companies during this two week period.

While Conseco has pointed to evidence regarding its assertions that Kattleman, Podner, and Bristol removed loan files from Conseco's offices, Plaintiff has not produced any evidence regarding the possible removal of loan files by any other former employees.  In addition, Plaintiff has not produced any concrete evidence that would lend support to the assertion that a former employee removed any customer lead sheets from any of Conseco's office.  Other than the information returned by Bristol at his deposition, Plaintiff has not pointed to any other evidence indicating that any other former employees have misappropriated proprietary information regarding Conseco's internal operations.  Plaintiff has provided the Court with evidence that all Conseco employees sign a form that acknowledges their understanding and receipt of Conseco's employee handbook.  There

8

is no evidence, however, that any former employee in question has ever signed a covenant not to compete, or a non-solicitation agreement.

Conseco now moves for this Court to issue a preliminary injunction. Specifically, Conseco moves for a preliminary injunction prohibiting the misappropriation of any Conseco trade secret contained in customer loan files, customer lead sheets, customer list, or any document containing information on Conseco's internal operations. Second, Conseco moves for a preliminary injunction prohibiting any solicitation by North American of Conseco employees. Third, Conseco apparently moves for a preliminary injunction prohibiting any of its former employees from performing their job duties at North American, theorizing that these former employees will "inevitably disclose" Coseco's trade secrets.

## II. DISCUSSION

In <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981), the Eighth Circuit Court of Appeals "set forth the now-familiar criteria governing preliminary injunctions." <u>Glenwood Bridge, Inc. v. City of Minneapolis</u>, 940 F.2d 367, 369 (8th Cir. 1991). Whether to grant a preliminary injunction involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of balance between this threat of irreparable harm and the injury that granting the injunction would inflict on the non-moving party, (3) the probability that the movant will succeed on the merits, and (4) the public interest. <u>Dataphase</u>, 640 F.2d at 114. In essence, this four-pronged "inquiry is an equitable one," requiring the Court to "consider 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits can be determined.'" <u>Glenwood Bridge</u>, 940 F.2d at 370, <u>quoting</u> <u>Dataphase</u>, 640

9

F.2d at 113.  It is important for a Court applying the Dataphase test to recognize that "no single factor is determinative." Id.

Conseco bases its present motion on three different legal theories. First, Conseco alleges that former employees have misappropriated its trade secrets, and that a threat of future misappropriation exists. Second, Conseco asks this Court to enjoin North American from soliciting Conseco's at-will employees. Third, Conseco asserts that its former employees will inevitably disclose its trade secrets during the performance of their job duties at North American.  Conseco thus avers that even though none of its former employees signed a covenant not to compete, the Court should enjoin the employees from working for North American, as they will inevitably disclose Conseco's trade secrets. The Court will apply the Dataphase test to each of these three legal theories.

### A. **Misappropriation of Trade Secrets**

In essence, Conseco seeks an injunction prohibiting the misappropriation of the following types of trade secrets: (1) customer loan files, (2) customer lead sheets, (3) customer lists compiled by former employees before leaving Conseco, and (4) confidential information concerning Conseco's internal operations.  Conseco's claims of misappropriation are based on the Uniform Trade Secrets Act.  This act has been passed in every state in which each former employee in question worked, including Missouri. See Mo. Ann. Stat. §§417.450 to 417.467 (1999); 765 Ill. Comp. Stat. Ann. 1065 (2000); Minn. Stat. Ann. §§ 325C.01 to 325C.08; Kan. Stat. Ann. §§ 60-3320 to 60-3330; Colo. Rev. Stat. §§ 7-74-101 to 7-74-110 (1999).  "As a general rule, Missouri courts will grant equitable protection for an employer's interest in trade secrets." Baxter International, Inc. v. Morris, 976 F.2d 1189, 1193 (8th Cir. 1992), citing A.B. Chance Co. v. Schmidt,

719 S.W.2d 854, 857 (Mo.Ct.App. 1986).  Under the Missouri Uniform Trade Secrets Act, a party

may obtain injunctive relief against the "actual or threatened misappropriation" of trade secrets. Mo.

Ann. Stat. § 417.455 (1995). See also Carboline Co. v. Lebeck, 990 F.Supp. 762, 767 (E.D. Mo.

1997).  The Act defines "trade secret" as:

> [I]nformation, including but not limited to, technical or nontechnical data, a formula, pattern,
> compilation, program, device, method technique, or process, that:
> (a) Derives independent economic value, actual or potential, from not being generally known
> to, and not being readily ascertainable by proper means by other persons who can obtain
> economic value form its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its
> secrecy.

Mo. Ann. Stat. §417.453(4) (1995).

Although it is impossible to create a precise test for determining whether a certain piece of

information constitutes a trade secret under the Uniform Trade Secrets Act, Missouri courts

generally rely on six factors in determining whether a particular piece of information is a trade

secret: (1) the extent to which the information is known outside the movant's business, (2) the extent

to which it is known by employees and others involved in that business, (3) the extent of measures

taken by the movant to guard the secrecy of the information, (4) the value of the information to him

and his competitors, (5) the amount of effort or money expended by movant in developing that

information, and (6) the ease or difficulty with which the information could be properly acquired or

duplicated by others. Baxter, 976 F.2d at 1194. "The burden of proving the existence of trade secrets

lies with the party seeking protection." Id., citing Carboline Co. v. Jarboe, 454 S.W.2d 540, 549 (Mo.

1970).  "Under Missouri law, the restraint imposed on a former employee to protect trade secrets

must not be greater than required for the protection of the former employer." Baxter, 976 F.2d at

11

1194. While a former employer is not required to await actual harm before seeking relief, injunctive relief "must be based on a real apprehension that future acts are not just threatened but in all probability will be committed." Id., citing A.B. Chance Co., 719 S.W.2d at 857.

With these standards in mind, the Court turns to applying the Dataphase preliminary injunction test in regards to each of Conseco's misappropriation claims.

### 1. Customer Loan Files

The Court first considers whether Conseco will likely succeed on its claims that actual or threatened misappropriation exists in regards to information from its customer loan files. Conseco asserts that those former employees who have resigned in order to work for North American have misappropriated the loan files of Conseco customers. These loan files contain confidential information concerning Conseco customers, including financial statements, loan applications, appraisals, income calculation worksheets, W2 forms, payroll information of Conseco customers, income calculation worksheets, tax returns and bank statements of Conseco customers. The information contained in these customer files constitutes trade secrets under the Missouri Uniform Trade Secrets Act. See Mo. Ann. Stat. §417.453(4) (1995). Not only do these loan files contain confidential information about the financial situation of Conseco's customers, but Conseco derives economic benefit from the details of that confidential information not being readily available to its competitors. See Id. Through possession of these loan files, Conseco is in a unique position of being able to analyze their customers specific financial needs and identify those current customers who may need additional Conseco financial services. Furthermore, Conseco takes reasonable steps to ensure the secrecy of these files. Witnesses for both parties testified that the information contained

12

in these files was recognized by all Conseco employees as confidential, and therefore not to be disclosed. Indeed, each Conseco employee acknowledges his or her understanding of this principle, as they all sign a document stating that they understand the terms of Conseco's Employee Handbook. That handbook specifically states that "non-public information about customers, dealers, and others is strictly confidential." Consequently, the Court finds that the information contained in these customer loan files constitute trade secrets within the meaning of the Missouri Uniform Trade Secrets Act.

Understanding that these files constitute trade secrets, the Court must next consider whether Conseco is likely to prevail on its claim of actual or threatened misappropriation of these trade secrets. Conseco asserts that Kevin Kattleman, Kevin Podner, and Scott Bristol all removed customer loan files or copies thereof from Conseco's offices. At the preliminary injunction hearing, Conseco produced evidence tending to support this assertion in regards to Kattleman and Podner. It is undisputed that fourteen Conseco customer loan files were in Kattleman's possession after he had resigned from Conseco. Furthermore, these customer loan files came to be located in his office at North American. While Kattleman returned these files at his deposition, he has been unable to provide an explanation for how exactly these files came to be transported from Conseco's branch office in O'Fallon, Illinois to his new office with North American. Conseco has produced evidence that would allow a reasonable finder of fact to conclude that there was at least a threat of misappropriation of the trade secrets contained in these fourteen files. Therefore, the Court holds that Conseco is likely to succeed on the merits of any misappropriation claim with regards to these fourteen loan files.

13

In addition, Conseco also produced evidence that Podner made copies of an unspecified number of customer loan files shortly before his resignation. While the Court has not yet been apprised of the exact number of files copied, Podner has testified that the number was substantial. The Court is cognizant of the fact that Podner claims he made these copies in order to help a fellow employee make the transition to loan originator. However, the Court finds that Conseco has provided evidence that would allow a reasonable finder of fact to determine a threat of misappropriation existed with regards to these specific files. Podner's wholesale copying of customer loan files, which coincided with his resignation from Conseco and hiring by North American, certainly creates at least the appearance of impropriety. Therefore, the Court finds that Conseco is likely to succeed on the merits of a misappropriation claim, in regards to those specific loan files copied by Podner just prior to his resignation from Conseco.

The Court is unconvinced, however, that Conseco is likely prevail on any claim of misappropriation of loan files by Bristol. Conseco did not produce any evidence during the preliminary injunction hearing which would support its assertions that Bristol removed any loan files from its offices in St. Charles, Missouri. At best, Conseco only elicited Bristol's concession that it was possible that loan originators working under him could have made copies of loan files prior to leaving for North American. Unlike the situations with Kattleman or Podner, Conseco has not pointed to any concrete evidence that would support a finding of threatened misappropriation by Bristol in regards to any customer loan files. Consequently, the Court finds that Conseco is unlikely to succeed on any claim of misappropriation of loan files by Bristol.

14

The Court is also unconvinced that Conseco is likely to prevail on any other claim regarding the actual or threatened misappropriation of any other loan files. With the exception of the evidence regarding Kattleman and Podner, Conseco has produced no other evidence which would allow this Court to conclude that former employees had removed loan files on a wide scale basis. Conseco has not produced evidence that would indicate any other former employee has removed loan files from its offices. Consequently, the Court finds that with the exception of those loan files detailed above in connection with former employees Kattleman and Podner, Conseco is unlikely to succeed on any other claim of misappropriation of loan files.

Having considered whether Conseco is likely to succeed on its misappropriation of loan file claims, the Court must next consider the threat of irreparable harm to Conseco if the status quo is not preserved. See Dataphase, 640 F.2d at 114. "Sufficient showing on this factor can be made ... by showing that the movant has no adequate remedy at law." Curtis 1000, Inc. v. Youngblade, 878 F.Supp. 1224, 1247 (N.D. Iowa. 1995). "Conversely, where the movant has an adequate legal remedy, a preliminary injunction will not issue." Id. The fact, however, that a movant may assert a valid damages claim does not necessarily preclude the issuance of a preliminary injunction, because damages relief may not fully compensate the movant for being denied its rights. Glenwood Bridge, 940 F.2d at 371-72.

In regards to the misappropriation of loan files, the Court finds that a threat of irreparable harm exists. The Court cannot predict the amount of harm that Conseco will suffer in terms of the lost earnings if North American uses the confidential information from those loan files to garner new clients. It is possible that if any North American employees were to act on the information in these

loan files, some individuals who had formerly sought debt consolidation services from Conseco would instead seek the same services from North American. In regards to misappropriation of loan files, Conseco has met its burden regarding irreparable harm.

The Court next considers the state of balance between this threat of irreparable harm and the injury that granting an injunction would inflict on the non-moving party and upon other interested parties. See Dataphase, 640 F.2d at 114. When analyzing this balance, the Court must consider the potential economic harm to each party and each interested party. Baker Elec. Co-op., Inc. v. Chaske, 28 F.3d 1466, 1473 (8th Cir. 1994). It is true that an injunction will economically impact not only North American but also any particular employees affected by such an injunction. However, the Court believes that it can narrowly tailor an injunction to have only a minimal impact on North American and its employees. Indeed, such an injunction should be narrowly tailored, as "the restraint imposed on a former employee to protect trade secrets must not be greater than required for the protection of the former employer." Baxter, 976 F.2d at 1194. An injunction that is narrowly tailored to only affect those particular Conseco loan files removed by Kattleman and copied by Podner would have a very limited financial impact on those individuals. Conversely, such an injunction would prevent irreparable harm to Conseco that would occur if Kattleman, Podner, or any other North American employee were to solicit customers based on information gleaned from these loan files.

Finally, the Court finds that the public interest also supports a narrowly tailored injunction in this case. The public has a strong interest in protecting trade secrets and having available protection from the type of misappropriation of confidential information that has been alleged with

16

regards to these customer loan files, especially in light of the fact that these files contain confidential information about individuals' finances. Indeed, the Missouri Uniform Trade Secrets Act was designed to stop the very sort of actions alleged to have been committed by Kattleman and Podner.

With the consideration of the four Dataphase factors in mind, the Court finds that narrowly tailored injunctive relief is warranted in regards to this claim. The Court will grant Conseco's motion for preliminary injunction in regards to those fourteen customer loan files removed by Kattleman, and in regards to any loan files copied by Podner one month prior to his resignation from Conseco. North American, Kattleman, and Podner, whether acting alone or in concert with others, shall be enjoined from either soliciting or accepting any business from those customers who are referenced in these specific loan files. Preliminary injunctive relief shall not be granted, however, in regards to any other claims by Conseco concerning customer loan files.

### 2. Customer Lead Sheets

The Court next considers the Dataphase factors in the context of Conseco's claim that former employees have misappropriated the information in Conseco's customer lead sheets. First, the Court finds that Conseco is not likely to prevail on its claims that actual or threatened misappropriation exists with regards to these customer lead sheets. Granted, the information contained in these customer lead sheets constitutes a trade secret under the Missouri Uniform Trade Secrets Act. Much of the information compiled in these lead sheets is a result of Conseco's own computer database, which uses a unique proprietary computer program to analyze the financial data of over 40 million individuals. While North American is correct that some of the information contained in these lead sheets is generally accessible to the public through other means, the Court agrees with Conseco that

17

these lead sheets provide a unique depth of information that is not generally accessible to the public. Consequently, Conseco "[d]erives independent economic value" from the information contained in these lead sheets "not being generally known" and "ascertainable by proper means" by its competitors. Mo. Ann. Stat. § 417.453(4) (1995).

Were Conseco likely to prevail on the merits of this claim, a threat of irreparable harm would indeed exist. The Court would be unable to predict the amount of harm that Conseco would suffer in terms of the lost earnings if North American used the confidential information from those customer lead sheets to garner new clients. Likewise, while an injunction regarding these customer lead sheets would create economic hardship on some North American employees, that hardship would be outweighed by the irreparable harm inflicted upon the loss of clients by Conseco. In addition, the public interest would mandate that these types of trade secrets be afforded trade secret protection by the Court.

However, the Court finds that Conseco has wholly failed to produce any evidence remotely indicating that misappropriation of these lead sheets has occurred or ever will occur. Unlike the facts concerning loan files in Kattleman or Podner's possession, no evidence exists that would indicate any customer lead sheets have ever been found to be missing. There is no evidence that any former employee copied a customer lead sheet prior to leaving. There is no evidence that any former Conseco employee now working for North American has ever acted upon these lead sheets after resigning from Conseco. Indeed, absolutely no evidence of misappropriation exists in regards to these customer lead sheets. Therefore, the Court finds that Conseco is not likely to prevail on the merits of its claims that any of its former employees misappropriated any of its customer lead sheets.

18

The Court holds that the utter lack of evidence to support this claim of misappropriation demands that injunctive relief in regards to Conseco's customer lead sheets be denied.

### 3. Customer Lists

The Court next considers whether Conseco is likely to prevail on its claim of misappropriation in regards to the list of Conseco customers compiled by Scott Bristol prior to his resignation. At the preliminary injunction hearing, Conseco produced evidence that Bristol compiled a list of 100 to 200 customers who had previously received financial services from Conseco. Bristol compiled this list immediately prior to his resignation. This customer list only included the names and telephone numbers of these customers. Bristol testified that as many as ten of the individuals on this list have sought financial services from North American.

The Court must first determine whether the customer list compiled by Bristol constitutes a trade secret within the meaning of the Missouri Uniform Trade Secrets Act. North American asserts that under Missouri law, customers lists by themselves are not protectable as trade secrets. Instead, North American asserts that such lists are only protectable in Missouri by means of a reasonably crafted covenant not to compete. The Court agrees. Several Missouri cases have analyzed customer lists in the context of determining whether a covenant not to compete was enforceable. In Mills v. Murray, 472 S.W.2d 6, 12 (Mo.App. 1971), the court stated as follows:

> It is universally recognized that an employer has a proprietary right in his stock of customers and their good will and, if otherwise reasonable, the courts will protect this asset against appropriation by an employee by the enforcement of ... a covenant not to compete.

Similarly, the court in Schmersahl, Treloar & Co. v. McHugh, 28 S.W.3d 345, 350 (Mo.App. 2000) stated that with "respect to its employees, an employer has a proprietary right in its stock of

19

customers and their goodwill which can be protected in an reasonable covenant not to compete." Thus, it is clear that customer lists are protectable, but only in the context of a reasonable covenant not to compete.   Missouri courts have stated as much, holding that "customer contacts are protectable, but not under a theory of confidential relationship or trade secret." Zemitsch v. Harrison, 712 S.W.2d 418, 422 (Mo.App. 1986).   Instead, "[b]ecause sales personnel may exert a special influence over that customer and entice that customer's business away from the employer, the proper means of protection is a non-competition agreement." Id. See also Schott v. Beussink, 950 S.W.2d 621, 624 (Mo.App. 1997) (holding that if an employer wished to protect itself from future competition from its current employees, it "should have inserted restrictive covenants within an employment contract").

With this precedent in mind, the Court agrees with North American that under Missouri law as it now stands, a customer list is not protectable as a trade secret in the absence of a covenant not to compete.  Furthermore, no evidence exists that Bristol or any former employee in question ever signed a covenant not to compete with Conseco.  Therefore, the Court finds that as a matter of law, Conseco cannot prevail on the merits of its claim of misappropriation in regards to the customer list compiled by Bristol.

Consequently, as Conseco cannot succeed on this claim, its motion in regards to any customer lists must be denied.

### 4. Confidential Information Concerning Conseco's Internal Operations

Conseco also alleges that actual or threatened misappropriation exists in regards to confidential information concerning its internal operations.  Conseco specifically points to Scott

20

Bristol when making this assertion. The evidence demonstrates that when reporting for his deposition, Bristol returned a number of documents to Conseco representatives. These documents contained information concerning Conseco's internal operations, including monthly retail point income reports generated by each Conseco office, reports ranking the retail volume by branch, reports of retails loans funded by region, financial summaries of each branch, FTE expense ratio reports, expense analysis reports, expense analysis retail volume variance reports, and reports on credit insurance protection.

The Court finds that Conseco is not likely to succeed on the merits of this particular claim. First, Conseco has provided the Court with no case law that would indicate these types of materials are trade secrets. Indeed, under the Missouri Uniform Trade Secrets Act, these materials would not appear to be trade secrets. While these documents contain listings of various branches and the sale volume of those branches, they do not contain any confidential information, such as marketing strategies, loan applications, or customer lead information. Consequently, the Court is unconvinced that Conseco "derives independent economic value" from this information not being readily known by the general public. Mo. Ann. Stat. § 417.453(4) (1995). Second, Conseco has not demonstrated that any employee of North American has or could use this information for any improper competitive purpose. Therefore, the Court finds that Conseco is not likely to succeed on this particular misappropriation claim.

In addition, a threat of irreparable harm does not exists regarding the disclosure of these documents. There is no evidence that would indicate North American could achieve any kind of competitive advantage from possession of this information. Because no threat of irreparable harm

21

exists, the state of balance between the harm of imposing an injunction and threatened harm mitigates towards denial of injunctive relief. Finally, Conseco has not pointed to any strong public interest that would mitigate towards an injunction regarding this information.

The balance of the Dataphase factors mandates that injunctive relief be denied in regards to Conseco's claim concerning this information on its internal operations.

## B. Solicitation of Conseco Employees

In addition to its misappropriation claims, Conseco also requests a preliminary injunction that prohibits North American from soliciting Conseco's at-will employees. However, Missouri law is unequivocally clear that "soliciting another's at-will employees does not constitute unfair competition." Schmersahl, Treloar & Co. v. McHugh, 28 S.W.3d 345, 351 (Mo. App. 2000). Indeed, "[t]here is no wrong in making an offer of employment to an at will employee." Id., citing Dwyer, Costello and Knox, P.C. v. Diak, 846 S.W.2d 742, 747 (Mo. App. 1993). "Competition in the marketplace encompasses competition in the labor market, including an employer's ability to solicit and hire the at-will employees of another and an at-will employee's ability to seek employment at better terms." Schmersahl, 28 S.W.3d at 349. Courts favor free competition in the marketplace. Accordingly, this policy "allows an employer to make an offer of employment to a competitor's at-will employee and allows an at-will employee to leave employment and compete with a former employer." Id., citing Dwyer, 846 S.W.2d at 747.

22

As this case law demonstrates, Conseco's solicitation claims fail as a matter of law. Therefore, Conseco's request for an injunction concerning solicitation by North American of Conseco employees must be denied.[2]

## C. Inevitable Disclosure

Finally, Conseco asks that court to enjoin its former employees from working for North American on the theory that they will "inevitably disclose" Conseco's trade secrets. "The doctrine of inevitable disclosure is the theory by which a court crafts a covenant not to compete even though an employee never signed such an agreement." Jonathan O. Harris, The Doctrine of Inevitable Disclosure: A Proposal to Balance Employer and Employee Interests, 78 Wash.U.L.Q. 325 (2000). Recently, the Seventh Circuit Court of Appeals has chosen to adopt the doctrine of inevitable disclosure, as manifested in PepsiCo, Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995).  In PepsiCo, the Seventh Circuit affirmed the granting of a preliminary injunction when a former employer had demonstrated three elements: (1) that the employee had access to a legitimate trade secret; (2) that the employee would inevitably disclose that trade secret in the performance of his new job; and (3) that the disclosure of that trade secret would cause irreparable harm to the former employer. See Id., 1267-71.

---

[2] On November 30, 2000, Conseco submitted a Motion for Leave to File Affidavit (Docket # 31), which this Court has granted.  In that affidavit, Conseco asserts that on November 27, 2000, nine employees in its Davenport, Iowa office resigned after receiving solicitation by North American.  As Court's present opinion makes clear, however, there is no prohibition against a company making an offer of employment to its competitor's at-will employees.  North American, like all of Conseco's competitors, is free to solicit all of Conseco's at-will employees, including those in its Davenport, Iowa office.

23

However, Conseco has not cited, and the Court is not aware of, any authority from the Eighth Circuit which adopts such a theory. In the absence of controlling authority, the Court will decline to enjoin former employees from working for their former employer's competitors when those employees did not sign a covenant not to compete. As stated above, none of the former employees ever signed a covenant not to compete. If Conseco wished to protect itself from future competition from its employees, it "should have inserted restrictive covenants within an employment contract." Schott, 950 S.W.2d at 624. Granting an inevitable disclosure injunction would essentially require the Court to judicially craft a covenant not to compete and apply it ex post facto, even though such a covenant never existed, and even though no former Conseco employee ever agreed to such a covenant. In the absence of controlling law, this Court refuses to engage in this type of judicial intervention.

### III. CONCLUSION

The Court holds that the facts warrant a narrowly tailored injunction relating to those customer loan files removed from Conseco's offices by Kevin Kattleman, and relating to those files copied by Kevin Podner just prior to his resignation. However, all of Conseco's other requests for injunctive relief are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for a Preliminary Injunction (Docket # 5) is **GRANTED IN PART**. Defendant North American, Kevin Kattleman and Kevin Podner are hereby enjoined and restrained, directly or indirectly, whether acting alone or in concert with others, including any officer, agent, representative, and employee of Defendant North American from:

24

1. Soliciting any business from any present or former Conseco client or customer who is referenced in any Conseco customer loan file that came to be in Kevin Kattleman's possession after his resignation from Conseco, including those fourteen loan files that he returned to Conseco's possession during his November 13, 2000 deposition.

2. Accepting any business from any present or former Conseco client or customer who is referenced in any Conseco customer loan file that came to be in Kevin Kattleman's possession after his resignation from Conseco, including those fourteen loan files that he returned to Conseco's possession during his November 13, 2000 deposition.

3. Soliciting any business from any present or former Conseco client or customer who is referenced in any Conseco customer loan file that was copied by Kevin Podner, or any person acting in concert with Kevin Podner, within one month prior to his resignation from Conseco.

4. Accepting any business from any present or former Conseco client or customer who is referenced in any Conseco customer loan file that was copied by Kevin Podner, or any person acting in concert with Kevin Podner, within one month prior to his resignation from Conseco.

**IT IS FURTHER ORDERED** that a hearing shall be held **December 14, 2000,** at **9:00 a.m.** At this hearing, Plaintiff Conseco and Defendant North American shall provide the Court with evidence regarding the individuals they assert are covered by the terms of this injunction. Each party shall also provide the Court with evidence regarding the length of time it asserts this injunction should remain in place. Additionally, each party shall be prepared to discuss with the Court when it can be prepared for a hearing regarding Plaintiff's Motion for Permanent Injunction.

25

**IT IS FURTHER ORDERED** that the preliminary injunction issued in this order shall remain in effect for **sixty (60) days** from the date of this order. The Court will re-evaluate the length of time that this injunction shall remain in place, pending both parties' presentation of evidence at above-mentioned hearing on December 14, 2000.

**IT IS FURTHER ORDERED** that all other motions for preliminary injunctive relief by Plaintiff Conseco are **DENIED**.

So ordered this ___6th___ day of December, 2000.

 

 

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

26

UNITED STATES DISTRICT COURT -- EASTERN MISSOURI
INTERNAL RECORD KEEPING


AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 12/06/00 by gfreeman
                    4:00cv1776     Conseco Finance vs North American Mortg

28:2201 Injunction


Michael Eng -  101139
NORTH AMERICAN MORTGAGE COMPANY
EAB Plaza, 10th Floor
Uniondale, NY  11556 - 0125

David Forth -  77927              Fax: 314-961-2726
Randall Oettle -  59935           Fax: 314-961-2726
Stephen Schoenbeck -  4299        Fax: 314-613-2550
David Wasinger -  4646            Fax: 314-961-2726


SCANNED & FAXED BY:

DEC 0 6 2000

DJO